F. Earl Filler, Jr., and Maedean Filler v. Commissioner.
Filler v. Commissioner
Docket No. 92966.
United States Tax Court
T.C. Memo 1962-254; 1962 Tax Ct. Memo LEXIS 54; 21 T.C.M. (CCH) 1348; T.C.M. (RIA) 62254; October 30, 1962
*54 Ellsworth W. Ginsberg, Esq., and Milton Suffian, Esq., for the petitioners. Sheldon Chertow, Esq., for the respondent. BRUCE Memorandum Opinion BRUCE, Judge: The respondent determined deficiencies in income tax for 1957, 1958, and 1959, in the respective amounts of $714.38, $729.58, and $260.47. The sole issue for decision is whether the petitioners are required to include in their gross income amounts of per diem allowances paid to F. Earl Filler, Jr., and, if so, are they entitled to deductions for such amounts. The case was submitted on a stipulation of facts and the deposition of F. Earl Filler, Jr. The stipulated facts are so found. The petitioners, husband and wife, filed their joint Federal income tax returns for the taxable years with the district director of internal revenue at St. Louis, Missouri. Since the issue concerns allowances paid to F. Earl Filler, Jr., he will be referred to as the petitioner. McDonnell Aircraft Corporation, hereinafter referred to as McDonnell, first employed F. Earl Filler, Jr., on May 19, 1952. Thereafter, he has continuously remained and is presently employed by McDonnell. McDonnel manufactures aircraft, missiles, and *55 electronics and automatic computer equipment, and produces, under contracts with the Government, aircraft and space equipment for various departments, including the United States Air Force and the United States Navy. In order to carry out these functions, McDonnell operates through an Engineering and a Production Division. The Engineering Division designs, tests, and develops airborne weapons, while the Production Division produces the weapons ordered. McDonnell's manufacturing operations are carried on in St. Louis, Missouri, while aircraft and missile testing is conducted by it at Holloman Air Force Base, Edwards Air Force Base, Patuxent River Naval Base, and Cape Canaveral. McDonnell derives over 99 percent of its business from Government contracts. For testing purposes at Holloman Air Force Base, which is located near Alamogordo, New Mexico, McDonnell, during the years 1956 through 1960, used facilities furnished by the Government. Other aircraft manufacturing companies also used facilities furnished by the Government at the Holloman base. McDonnell had a base facility crew at Holloman which employed foremen, tool keepers, timekeepers, and guards. These workers were not assigned *56 to any particular project but did general work. In general, the testing performed at Holloman was planned in advance. The time required for each stage of the work was estimated, but it was not always possible to adhere to such estimates. The number of McDonnell's employees assigned to Holloman during the period 1956 through 1960 ranged from 50 to about 450. In October 1956, McDonnell contracted with the U.S. Air Force to carry out research and development of an airplane known as the F-101. This contract provided that McDonnell perform experimental testing of the craft at Holloman Air Force Base, New Mexico. On September 8, 1955, McDonnell contracted with the U.S. Air Force to conduct research and development projects on a missle known as the GAM-72. The contract required that McDonnell conduct experimental testing of the missile at facilities furnished by the Air Force at Holloman Air Force Base, New Mexico. Under these contracts, or supplements thereto, McDonnell scheduled and carried out at the Holloman Air Force Base during the years 1956 through 1960 twelve separate development and testing projects. Each of these contracts contained the following provisions relative to the *57 Government's payment to McDonnell of travel and per diem costs: General Provisions Clause 4: (a) For the performance of this contract the Government shall pay to the contractor the costs thereof determined by the Contracting Officer to be allowable in accordance with Part II of section XV of the Air Force Procurement Regulations as in effect on the date of this contract and the schedule (hereinafter referred to as "allowable costs") plus such fixed fee, if any, as may be provided for in the schedule. * * *
Part vi Additional allowable costs - Within the meaning of Clause 4 of the General Provisions of this contract the following costs are deemed allowable in the performance of this contract. * * *
4. Costs for travel and per diem in accordance with the contractor's control procedures accepted by the administrative Contracting Officer. The schedule referred to in Clause 4 of the General Provisions is a schedule of the specific job or item to be undertaken and shows the amount to be paid therefor. McDonnell formulated and submitted control procedures on travel and relocation policy and on special field assignments to an Air Force contracting officer for approval. *58 In the event the contracting officer failed to approve a control procedure, McDonnell revised and corrected the objectionable matter. McDonnell's control procedure 20.100, the travel and relocation policy, approved by an Air Force contracting officer and issued on January 1, 1955, was in force at McDonnell during the years at issue herein. McDonnell's control procedure 20.103, entitled "Travel - Special Field Assignment," approved by the Air Force contracting officer and issued on January 1, 1955, was in force during the years at issue herein. Insofar as material herein, the following represents McDonnell's policy established under these procedures: [1]
A. POLICY 1. Individual employees or groups of employees assigned to a single location for any period of 30 days to 9 months, will be subject to the regulations and provisions of this procedure, except when circumstances require special regulations, provisions, or exceptions to this policy. C. REGULATIONS 1. No employee may be "assigned" to a single location for any period in excess of 9 months. a. Extension of "assignment" beyond 9 months will require review and additional approval of Vice-President, Personnel, or his designee. *59 2. No employee may be "assigned" more than once for the duration of a single project. 3. Employee "assigned" for 60 days or more may take dependents to point of assignment subject to the following: a. Only one round trip for each dependent will be allowed during "assignment." 4. c. No per diem will be paid during vacations, regardless of where vacation is spent. 4. LIVING ALLOWANCES: a. EMPLOYEE: $10.00 per day throughout assignment, except during vacations, beginning with day of departure from home, from which lodging must be provided. Although minor revisions were made to the control procedures in 1957, 1958, 1959, and 1960, their substance as stated above was not changed. Under the contracts and control procedures the U.S. Air Force and McDonnell agreed that the latter's employees assigned for duty at testing facilities located away from the St. Louis plant would be initially assigned for a period not to exceed 9 months, but that subsequent extensions of this period could be made. McDonnell was *60 reimbursed by the Government for the $10 per diem living allowance paid employees transferred to Holloman. On or about May 31, 1956, petitioner's family consisting of his wife and child, moved from St. Louis to Alamogordo, New Mexico, and thereafter maintained their home with petitioner until his subsequent return to St. Louis. On or about June 11, 1959, McDonnell transferred petitioner from Holloman to its plant in St. Louis. The following schedule summarizes petitioner's wages and the amount of per diem allowance received in each of the years 1957, 1958, and 1959: $10 Per Diem
Year
Wages
Allowance
Total
1957
$6,771.72
$3,570.00
$10,341.72
1958
8,193.32
3,360.00
11,553.32
1959
8,480.66
1,315.48
9,796.14
McDonnell required petitioner and all other employees entitled to the per diem living allowance to sign a travel expense report each week. During the year 1957 and until early 1958, petitioner signed weekly travel and expense reports. Sometime in early 1958 McDonnell discontinued the use of these travel expense reports and substituted therefor a weekly list which contained the names of all employees at Holloman during the particular *61 week and the amount of per diem living allowance due to each. In order to receive his per diem allowance, petitioner signed this list opposite his name. Beginning in May 1956 through the time of the petitioner's transfer in June of 1959, McDonnell assigned a large number of its employees at St. Louis to Holloman to work on the F-101 and GAM-72. Substantially all of these employees were initially assigned for a period of 9 months and these assignments were renewed if the employee's services at Holloman were still required at the end of the 9-month period. At one time, over 300 McDonnell employees who had worked at St. Louis were assigned at Holloman. All employees who were assigned to Holloman from St. Louis received $10 per diem living allowance while they were at Holloman. The Armed Services Procurement Regulations in force at the time the contracts for the F-101 and GAM-72 were entered into between the Government and McDonnell provided a general basis for the determination of the allowable direct costs including material, labor, and other direct costs, and allowable indirect costs, and contained examples of items of allowable and unallowable costs. Included in the items set out *62 as examples of items of allowable costs was an item entitled "travel expenses." The petitioner was assigned to Holloman under a "Travel and Relocation Authority" for a period from May 31, 1956, to January 2, 1957, covering travel from St. Louis to Alamogordo and return, with authority to drive a private auto and pull house trailer taking his wife and one child. In January 1957 approval was given to a four-month extension of assignment of certain employees, including the petitioner, with an expiration date of February 28, 1957. There were several subsequent four-month extensions thereafter. The petitioner owned a house trailer and lived in it with his family while at Alamogordo. He voted in Missouri in 1956, 1957, 1958, and 1959. On their income tax returns the petitioners gave their address as Bunceton, Missouri. The respondent determined that the per diem allowances were includable in gross income and that the petitioner is not entitled to deduct travel expenses, meals or lodging in these amounts in determining adjusted gross income. The petitioner contends that these amounts are not includable in gross income since they were paid under an expense allowance arrangement with *63 his employer; that they covered travel expenses while away from home in connection with his services as an employee for which expenses he accounted to his employer; and that if they are includable in gross income, he is entitled to corresponding deductions of these amounts. The status, for income tax purposes, of the per diem allowances paid by McDonnell to employees assigned to Holloman for work on projects under contracts with the Government was determined in Leo C. Cockrell, 38 T.C. - (June 28, 1962), (on appeal C.A. 8, Sept. 25, 1962). We there held that the per diem allowance was includable in the employee's gross income and that no part of it was deductible as traveling expenses while away from home in the pursuit of a trade or business. The facts in the petitioner's case are not distinguishable from those in the Cockrell case, and the decision therein is controlling here. Decision will be entered for the respondent. Footnotes
1. Omitted portions of these procedures, customarily shown by asterisks, are not so indicated by the stipulation of facts, and accordingly are not so indicated herein.↩